47 So.2d 586

### In re OPINION OF THE JUSTICES.
### No. 112.

Supreme Court of Alabama.
July 11, 1950.

Governor James E. Folsom
Capitol
Montgomery, Alabama
Dear Sir:

Under date of July 7, 1950, you propounded to the Justices of the Supreme Court of Alabama, under the provisions of Title 13, Section 34, of the Code of Alabama 1940, the following questions:

(1) Can a member of the State Senate of Alabama who has been declared by the Senate qualified as a member thereof, be declared by the Senate ineligible to continue as a State Senator except as provided by Section 53 of the Constitution of Alabama of 1901?

(2) Upon the invocation of Section 53 of the Constitution of Alabama of 1901 to expel a member of the State Senate of Alabama, would a vote of two-thirds of the members elected to that Body, or only two-thirds of a quorum present and voting, be required to expel a member of the said State Senate?

(3) Does Section 51 of the Constitution of Alabama of 1901, providing that each House shall judge of the election, returns and qualifications of its members, apply to a State Senator who has already been de-clared elected, qualified and became a member of the Senate of Alabama and is serving therein as such?

(4) Can the office of State Senator of the State of Alabama be declared vacant except by expulsion of the member holding such office, as provided by Section 53 of the Constitution of Alabama of 1901?

In reply we beg to advise as follows:

All of your questions relate to the procedure for removing a state senator from office or declaring the office vacant.

We find nothing in the Constitution of Alabama 1901, conferring either original or appellate jurisdiction on this or any other court to determine the several questions involved in your inquiry.

The two sections constituting article 3 of the Constitution of Alabama 1901, are as follows:

Section 42 of the Constitution of Alabama 1901, declares: "The powers of the government of the State of Alabama shall be divided into three distinct departments, each of which shall be confided to a separate body of magistracy, to wit: Those which are legislative, to one; those which are executive, to another; and those which are judicial, to another."

Section 43 of the Constitution of Alabama 1901, provides: "In the government of this state, except in the instances in this Constitution hereinafter expressly directed or permitted, the legislative department shall never exercise the executive and judicial powers, or either of them; the executive shall never exercise the legislative and judicial powers, or either of them; the judicial shall never exercise the legislative and executive powers, or either of them; to the end that it may be a government of laws and not of men."

In Scott v. Strobach, 49 Ala. 477, it was said: "The purpose of this article of the Constitution was to separate and distribute the powers of the government, and to prevent their centralization, by prohibiting the same body or individual from the exercise of power pertaining to any two of these departments. All the objects which governments are instituted to accomplish, and all individual rights, depend principally, if

not exclusively, upon the observance and preservation of this distribution of power. Separate bodies, exercising distinct powers, supreme and independent within their constitutional sphere, operate as checks, the one upon the other, guarding against usurpation, and the absorption by either of power assigned by the Constitution to another. The legislative, executive, and judicial departments are subject to the limitations of the Constitution, an embodiment of the sovereignty and will of the people of the State. They do not act separately and independently of each other; the concurrence of their action is essential to the vindication of individual right, and to the maintenance of the dignity and authority of the State. In the General Assembly resides the duty and power of ordaining laws; in the judiciary, the exposition and interpretation of the law; in the executive, the enforcement and execution of the law, as ordained by the legislature, in accordance with the exposition and interpretation of the judiciary. The duty and power of these departments distinguish the one from the other, and furnish the criterion by which we determine to which of the departments an officer belongs."

■ Section 51 of the Constitution of Alabama 1901, declares, in part: "Each house shall choose its own officers and shall judge of the election, returns, and qualifications of its members."

The Constitutions of most, if not all, of the states contain provisions similar to those quoted above from Section 51 of the Constitution of this state. And it is well settled that such a provision vests the legislature with sole and exclusive power in this regard, and deprives the courts of jurisdiction of those matters.

The Justices of the Supreme Court of New Hampshire refused to answer a related request on the ground, among others, that "such opinion, if given, could have no greater weight or authority than a criticism of one branch of the government upon the conduct of another coordinate branch; and that such official act on the part of the justices of this court would not be consistent with the grave duties imposed upon them by the constitution of the state." Opinion of the Justices, 56 N.H. 570.

In Peabody v. School Committee, 115 Mass. 383, the Supreme Court of Massachusetts, in passing upon a similar provision of its constitution, says: "It cannot be doubted that either branch of the legislature is thus made the final and exclusive judge of all questions, whether of law or of fact, respecting such elections, returns, or qualifications, so far as they are involved in the determination of the right of any person to be a member thereof; and that while the constitution, so far as it contains any provisions which are applicable, is to be the guide, the decision of either house upon the question whether any person is or is not entitled to a seat therein cannot be disputed or revised by any court or authority whatever."

See Covington v. Buffett et al., 90 Md. 569, 45 A. 204, 47 L.R.A. 622.

The exclusiveness of the jurisdiction of the Senate in the matters about which you inquire is shown by the following quotation from the opinion in State ex rel. Boulware v. Porter, 55 Mont. 471, 178 P. 832, 833: "The Constitution clothes each house of the Legislative Assembly with plenary and exclusive authority to determine upon the election returns, and qualifications of its members. Article 5, § 9. The authority thus recognized as lodged in each house is indispensable to its independence and existence. It emanates directly from the people to each house as an independent entity, and cannot be delegated or granted away. Each house acts for itself, and from its decision there is no appeal. No individual, officer, court, or other tribunal can infringe upon its exclusive prerogative to determine for itself, and in its own way, whether a person who presents himself for membership is entitled to a seat. State ex rel. Smith v. District Court, 50 Mont. 134, 145 P. 721; State ex rel. Ford v. Cutts, 53 Mont. 300, 163 P. 470. Either house may even act arbitrarily and in disregard of fundamental rights. It may oust a member whose election is beyond controversy, and seat as a member a person who is disqualified for the office; but, if it should do so, there is still no recourse."

· In Scott v. Strobach, supra, the question was presented as to whether a member of the Legislature was eligible to election to the office of sheriff. This court decided that he was, saying that the acceptance of the office of sheriff operated as an implied resignation of his seat in the Legislature. But it also distinctly said that the courts were powerless to enforce such resignation.

To answer your inquiry would be to express an opinion on questions which we have no right to decide for the reason that the Constitution has committed them to the determination of the respective houses of the Legislature. It cannot be gainsaid that each house of the Legislature is the sole ultimate judge of the right of a person to a seat therein. It would therefore ill-become the justices of this court to attempt to answer the questions presented.

Neither the Constitution nor section 34 of Title 13, Code of Alabama 1940, contemplates the answering of such questions by the justices of this Court.

We must therefore respectfully decline to express an opinion on matters which, under the Constitution of this state, *only* the Senate of Alabama has jurisdiction. § 51, Constitution 1901; Ex parte Echols, 39 Ala. 698, 88 Am.Dec. 749; Scott v. Strobach, supra.

The question may arise in Your Excellency's mind as to how the undersigned Justices can consistently decline to answer your inquiries when the same justices recently answered an inquiry from the Senate as to whether or not the Commissioner of Public Welfare of this State holds an office of profit under this state within the meaning of § 280 of the Constitution.

The answer to such question is that your inquiry calls for our opinion on questions over which we have no jurisdiction, such jurisdiction being exclusively in the Senate. But the inquiry from the Senate related to a matter of judicial inquiry. Whether any given position is an office of profit is a matter of judicial inquiry. True, the Senate might well have determined that question for itself, but never-

theless that fact does not deprive the justices of this Court from treating such question when requested by the Senate to do so. Our response to the Senate was in full accord with our action in Opinion of the Justices, 244 Ala. 386, 13 So.2d 674. .

The distinction is clearly demonstrated in the case of State ex rel. Biggs v. Corley, Lieutenant Governor, 6 W.W.Harr. 135, 36 Del. 135, 172 A. 415. That was a mandamus proceeding to require the Lieutenant Governor, the presiding officer of the Senate, to issue writs of election for the purpose of filling vacancies alleged to exist in the Senate. It was claimed that three members of the Senate had in effect vacated their Senate seats by accepting appointments to offices under the State.

The Delaware court did not hesitate to determine whether or not the places to which the three Senators had been appointed were offices under the State. It was held that each of the Senators was appointed to an office under the State.

But the Delaware court refused to pass on the question as to whether or not vacancies had been created in the Senate, saying:

"It is a general principle of law that where the holder of an office accepts another incompatible office, the acceptance of the second office operates as a resignation or renunciation of the first as fully and effectually as though the relinquishment of the first office had been an intentional and voluntary act. Throop, Public Offices, §§ 30, 51; Mecham, Public Offices, § 420; Rex v. Patterson, 4 Barn. & Ad. 9. And the same principle applies where the incompatibility is declared by constitutional provisions similar to section 14, art. 2, of our Constitution. People [ex rel. Myers] v. Haas, 145 Ill.App. 283; Lodge v. Farrell, 155 Mich. 426, 119 N.W. 573; State ex rel. Leland v. Mason, 61 Ohio St. 513, 56 N.E. 468; State [ex rel. McMillan] v. Sadler, 25 Nev. 131, 58 P. 284, 59 P. 546, 63 P. 128, 83 Am.St.Rep. 573; In re Advisory Opinion, 76 Fla. 417, 79 So. 874; State v. Nye, 148 Wis. 659, 135 N.W. 126; State ex rel. Owens v. Draper, 45 Mo. 355; Meagher v. Howell, 171 Ky. 238, 188 S.W.

373. See, also, Scott v. Strobach, 49 Ala. 477; 86 Am.St.Rep. 583, Note.

"And, when the resignation has become effective by the acceptance of the incompatible office, a resignation of the second office does not revive or restore the right to hold the first office which has thus been abandoned or resigned. Relender v. State ex rel. Utz, 149 Ind. 283, 49 N.E. 30; Bishop v. State [ex rel. Griner], 149 Ind. 223, 48 N.E. 1038, 39 L.R.A. 278, 63 Am. St.Rep. 270; State ex rel. Birkhauser v. Moores, 52 Neb. 634, 72 N.W. 1056; State v. Goff, 15 R.I. 508, 9 A. 226, 2 Am.St.Rep. 921; State ex rel. Walker v. Bus, 135 Mo. 325, 36 S.W. 636, 638, 33 L.R.A. 616; Com. v. Sherrard, 4 Leigh 643, [31 Va. 643]; State [ex rel. Williams] v. Fitts, 49 Ala. 402.

"When a question involving an implied resignation of one office (it not being that of a member of a legislature), by the acceptance of another office, is presented to the courts for decision, the courts have jurisdiction in the full and complete sense of having power and authority to decide and to enforce the execution of what is decreed, and no difficulty arises. But, when the first office is that of a representative or senator in the General Assembly, and the question arises whether the acceptance of another office operates as an implied resignation of the first, the principle of resignation or abandonment remains the same, and should be adhered to and enforced, and we may not assume that the officials of the state under their oaths of office will repudiate knowingly this constitutional prohibition; but the Courts, ordinarily constituted, may not proceed to hear and adjudicate, for they are not the tribunals provided by the Constitution for the determination of such question. They have no jurisdiction for the reason that another and different tribunal possesses the sole jurisdiction, that is, the senate or the house as the case may be, under that provision of the Constitution which gives to each house of the legislature the right, power and authority to judge of the elections, returns and qualifications of its own members. This is necessarily so, for the power and authority must reside somewhere, the departments of government must be separate and distinct, free and independent, and, while the courts will jealously guard its powers and jurisdictions, they will be careful not to infringe upon the powers, prerogatives and jurisdictions of the legislative department. Ex parte Echols, 39 Ala. 698, 88 Am.Dec. 749." 172 A. 419–420.

In view of the foregoing, we must decline to answer your inquiry.

Respectfully,
FOSTER,
LIVINGSTON,
LAWSON,
STAKELY,
Associate Justices.

I concur, as expressed above by the majority, that the matters inquired about, being irrevisably within the power and discretion of the Senate to decide, are not subject to judicial inquiry and that the questions propounded are, therefore, not within the permissible scope of Section 34, Title 13, Code of Alabama, 1940.

However refusing to close my eyes to reality, I think the inquiry from the Senate mentioned above, answered by my four brothers last week, and the instant one are substantially no different in effect. They stem from the same cause viz.: an effort to have a judicial expression on the qualifications or right, vel non, of a member of the Senate to a seat therein—a matter entirely within the discretion of the Senate and beyond the scope of judicial supervision.

I, therefore, for this reason did not answer the prior inquiry of the Senate, as I must respectfully refrain from doing now, as to Your Excellency's.

I beg leave to assure Your Excellency and also the Senate of my great deference and respect, as well as entire willingness within the limits of the law, to contribute my opinion on any serious constitutional question which it is proper to give under the aforesaid code section. Since however the expression of any opinion on the questions now posed, as well as those in

the Senate inquiry last week, could in no way govern the ultimate decision of the Senate in the matter, I must respectfully refrain from answering.

This has been my consistent view. See In re Opinion of the Justices, 252 Ala. 351, 360, 361, 40 So.2d 849, 857, 858.

Respectfully,
SIMPSON,
Associate Justice.

Governor James E. Folsom
Capitol
Montgomery, Alabama
Dear Sir:

Replying to the attached inquiry you are advised that it is my opinion that Section 51 of the Constitution of 1901 has in effect been rewritten into the Amendment No. LVII, 1949 Cum.Supp. to Vol. One, Code of 1940, page 66, and that said section as rewritten restricts the power to judge of the election returns and qualifications of the members of the Legislature to said initial session. I quote: "No business can be transacted at such sessions except the organization of the legislature, the election of officers, the appointment of standing committees of the senate and the house of representatives for the ensuing four years, which election and appointment may, however, also be made at such other times as may be necessary, the opening and publication of the returns and the ascertainment and declaration of the results of the election for governor, lieutenant-governor, attorney-general, state auditor, secretary of state, state treasurer, superintendent of education, and commissioner of agriculture and industries, the election of such officers in the event of a tie vote, the determination of contested elections for such offices, *the judging of the election returns and qualification of the members of the legislature, and the inauguration of the governor and the other elected state officers whose terms of office are concurrent with that of the governor. * * *"* (Italics supplied.)

There is no provision in said Section LVII which authorizes the exclusion of a member or the denial of his right to participate once his qualifications have been accepted and he has been seated.

Section 52 of the Constitution provides: "A majority of each house shall constitute a quorum to do business." The business thus referred to is the general business of the legislature. The only provision found in the Constitution for punishing or excluding a member is in Section 53 which provides: "Each house shall have power to determine the rules of its proceedings and to punish its members and other persons, for contempt or disorderly behavior in its presence; to enforce obedience to its processes; to protect its members against violence, or offers of bribes or corrupt solicitation; *and with the concurrence of two-thirds of the house,* to expel a member, but not a second time for the same offense; and the two houses shall have all the powers necessary for the legislature of a free state." (Italics supplied.)

The powers conferred on the respective houses by the last part of said Section 53, last above-emphasized, are highly punitive in nature and purpose and to sustain such action it must be supported by at least a two-thirds vote of the members of the house present and participating.

Therefore, it is my considered opinion that a member whose qualifications have been accepted and seated at the initial regular session cannot be expelled and denied the right to participate in the deliberation of the body as a representative of his constituents except by a two-thirds vote of said body. The provisions of said Section LVII are drastically different from the provisions of the constitution of states considered in State ex rel. Briggs v. Corley, Lt. Governor, 6 W.W.Harr. 135, 36 Del. 135, 172 A. 415.

Respectfully submitted,
BROWN,
Associate Justice.